### *L. S. & M. S. RY. CO. v. EDWARD L. LAMPHERE.

RECOVERY PRIOR TO VICE PRINCIPAL LAW.

> Prior to the act of 1890 (87 O. L. 149), a brakeman injured in coupling cars by reason of the inspector having left in a bolt so large as to bind the link, could not recover because the inspector was a fellow servant.

ERROR to the Court of Common Pleas of Lucas county.

HAYNES, J.

In this case a petition is filed for the purpose of reversing the judgment of the court of common pleas in a case wherein Edward L. Lamphere was plaintiff and the Lake Shore & Michigan Southern Railway Co. was defendant.

The amended petition complains of the railway company for injuries received by the plaintiff, Lamphere, who was employed as a yard brakeman in the yards of the company in East Toledo; that some time in the night he undertook to make a coupling between two cars, one of which was a car that had what is called an Eames draw-bar or coupler upon it, like the one lying here before us, and the other car had a skeleton coupler, as it is called, one being about three inches higher than the other, projecting from the car so that when the cars approached each other it was necessary to raise the link some two or three inches in order to have it enter into the car towards which it was approaching—the stationary car—and make the necessary coupling. These cars, it appears, had come from the west some time prior to the day of the accident—just when, it does not appear from the evidence—and were in the yard and gathered together at this time for the purpose of making up a train to go east.

The petition, in setting out the character of the cars, and the fact that one of the cars was higher than the other, proceeds to state that "for the purpose of making the coupling, plaintiff took hold of the link in the draw-bar on the advancing car (that is, the Eames car), and attempted to raise the same to make the coupling aforesaid; that said link was held very firmly in its place by an extra large pin, so that it could not be moved, and in attempting to move the same into position to make the coupling, plaintiff's hand slipped and the right arm was caught between the buffers or deadwoods of the two cars, both of said cars being supplied with double buffers or deadwoods, and was severely injured

---

* This case was distinguished in Stewart v. Bridge Co., 8 Circ. Dec., 454, 458.

in this, that his right arm was jammed and smashed so that it became necessary to amputate the same just below the elbow.'' Further on he says, that ''the injury so sustained by him was without any fault or negligence on his part, but through the fault or negligence of the said defendant in not properly inspecting the said cars; in not furnishing proper coupling-pins for use in such wide draw-bars; in allowing the said center pin to be so firmly driven into and through the said link and in receiving the said Merchants' Despatch Transportation Co. car with the link so firmly held in the draw-bar.'' These are really the two grounds upon which he brings the action.

The testimony of the plaintiff is, that about half-past twelve, I think it was, on a certain night of January, 1890, he was at work with the engine, and was assigned the duty of coupling cars, and this Merchants' Despatch car with the Eames draw-bar upon it, was hitched to a train of some eight or ten cars, with a yard locomotive attached to it, and was backed down upon a certain track called No. 9, towards the other car having the skeleton draw-bar in it; that he had approached near the cars as the cars approached each other, and when the cars were within five or six feet of each other, he drew still nearer and perceived the manner in which the coupling-pin was lying, and that he then went in and attempted to make the coupling. He says he didn't use a stick, because it would be of no avail, one link being higher than the other; that the link would not balance, but would slide back into the draw-bar if he atempted to use a stick; so he took hold with his hand, and pushed it up, and at the same moment his arm slipped and was thrown up and was severely injured, and was amputated within the next twenty-four hours. He says further, that not feeling the blow or the pain at the first moment, he turned and looked at the coupling and held his light towards it, and he saw then that the Eames draw-bar, which had the large link in it, had the link thrown back, and that there was a smaller link in it, and that was held by a pin which went through it, and that it was not an ordinary pin used by the Lake Shore Company upon its cars, but was a bolt such as was frequently used for the purpose of fastening the car itself upon the truck; and that the link was projecting some, and was fast; that the large bolt held it, the bolt filling the space in the link very full so that it could not be moved, and that the reason he received the injury was, that instead of the bolt moving as he had anticipated, it was firm, and in pushing it his arm slipped.

The conductor of the train, a soon as he saw the man cared for, went to the cars where the injury occurred, and made, as he says, a thorough examination of the cars. He says he found the coupling of the draw-bar of the Eames car to be an ordinary link and with an ordinary Lake Shore bolt through it put in from the under side and passed up through, as was the custom when they used those bolts; that he handled the link, and that there was no trouble with it. The yardmaster was occupied in sending off the plaintiff below, but when he had done that, he went for an inspector, and the two went to the cars, which the evidence shows remained substantially as they were, and they made an inspection of the cars, and found that the bolt was loose; that the link was loose; that the bolt passed through it; that it was an ordinary link of the Lake Shore cars, and that the bolt was an ordinary Lake Shore bolt.

In giving his testimony the inspector testified that the cars were all inspected as they came into the yard, and, while he could not tell the exact moment that this car came in, he said that it had been inspected. Upon cross-sxamination that matter was gone into thoroughly, and it was shown very clearly that the car itself had been inspected by the regular inspector of the Lake Shore Company when it came into the yards of the company, and before it was put into this train.

This injury occurred prior to the passage of the act of 1890, 87 O. L., 149, so that the cause of action arose under the law as it stood when the decision in *Railroad Co.* v. *Fitzpatrick*, 42 O. S., 318, was in full force, and it being shown beyond contradiction that the car was inspected when it came into the yard, if

the contention of the plaintiff be true that the bolt which was used was a bolt such as was used for the fastening ot the car upon the truck, that it was too large for the link, and if the link was bound by the bolt in the manner in which he has stated, and if it had come into the yard and was received and used by the Lake Shore Company in that condition, then the negligence, if there was any negligence, was that of the inspector in receiving the car; and, under the decision in *Railroad Co.* v. *Fitzpatrick, supra,* that would be the negligence of a co-employee for which the company would not be liable; so, upon that ground, as a matter of law, the plaintiff was not entitled to maintain his action.

Furthermore, if the testimony be received and weighed, we think that the weight of the testimony of three witnesses clearly establishes the fact that plaintiff is mistaken when he says that the link was bound at that time, or that the bolt used was larger than the ordinary coupling pin of a Lake Shore car.

The judgment of the common pleas will be reversed, and the judgment set aside, for the reason that the verdict is contrary to law, and not sustained by sufficient evidence, and the case will be remanded for a new trial.

*E. D. Potter, Jr.,* for plaintiff in error.

*L. G. Richardson* and *J. H. Southard,* for defendant in error.